WILLIAM STEWART, PROSECUTOR, v. THE TOWNSHIP OF RIVERSIDE, IN THE COUNTY OF BURLINGTON, ET AL.

Submitted July 3, 1902—Decided November 10, 1902.

1. Under section 8 of the revised act concerning townships (*Pamph. L.* 1899, *p.* 372), which provides that "if any person shall resign from his office, or shall die or remove out of the township, or become incapable of serving," &c., his office shall be deemed to be vacant, the "removal out of the township" contemplated is a voluntary removal. A removal by operation of law, resulting from an act of the legislature cutting off a portion of the township, including the place of residence of a township officer who, when elected, was a resident within its territory, is not a "removal out of the township" within the meaning of that section.
2. In the same section, the words "become incapable of serving" refer to a personal incapacity, mental or physical, on the part of the incumbent of an office, and not to a supposed incapacity created by a change of the township boundary leaving the incumbent a non-resident of the township.

On *certiorari.*

Before Justices DIXON, HENDRICKSON and PITNEY.

For the prosecutor, *John G. Horner.*

For the defendants, *George M. Bacon* and *Joseph H. Gaskill.*

The opinion of the court was delivered by

PITNEY, J. The township of Riverside was created by act of the legislature approved February 20th, 1895 (*Pamph. L., p.* 891), and its territorial limits included the residence and farm of the prosecutor. In March, 1900, he was elected a member of the township committee for a term of three years, took the oath of office and has since discharged his duties until prevented by the resolutions now under review. By act approved March 21st, 1901 (*Pamph. L., p.* 244), the legislature set off from the township of Riverside a portion

of its territory and annexed that territory to the township of Delran. In this territory was the residence of the prosecutor. The act of 1901 took effect immediately. In anticipation of its passage the prosecutor left his farm and moved into the village of Riverside (the territory of which remained unaffected by the act of 1901) and there held his residence until shortly after the passage of that act, when he moved to a building constructed by him for the purpose, located near to his farm, but in the township of Riverside, as changed by the law of 1901.

In the spring of the year 1902, the township committee for the first time took official notice of what it deemed to be sufficient cause to disable Mr. Stewart from continuing to serve as a member of that body, and on March 22d adopted certain resolutions, the purport of which is, that the said William Stewart, since his election as a member of the township committee, has ceased to be a resident of the township of Riverside; that a vacancy has been created in the office of the township committee, and that one Fairbrother be appointed as a member of the township committee in place of the said William Stewart. These resolutions are challenged by the present writ of *certiorari*.

By the revised Township act of 1899 (*Pamph. L., p.* 372) it is provided in section 4 that the qualified voters may elect, among other officers, the members of the township committee, each of whom shall be a resident of the township. In section 8 the matter of vacancies is dealt with, and it is enacted that "in case any two or more persons at any township election have an equal number of votes for the same office, or there be a failure to elect any officer, or a refusal by any person elected or appointed to any office to accept the same, or if any person shall resign from his office, or shall die or remove out of the township, or become incapable of serving, or fail to take or subscribe the oath or affirmation prescribed by law for his office, or shall fail to deliver such oath or affirmation to the township clerk within the time limited, or shall not give the security required by law within the time for that purpose limited, then such office shall be deemed to be vacant,

and the township committee shall forthwith, by resolution, fill such vacancy." It will be seen that, excepting death and incapacity, all the grounds on which a vacancy is declared, after an officer shall have been duly elected, arise from the refusal or neglect of the party elected to qualify or his removal out of the township.

Section 8 seems to cover the entire subject, and to exclude the creation of a vacancy by implication from circumstances not covered by that section. In our opinion a removal out of the township, in order to create a vacancy, must be a voluntary removal. A removal by operation of law, resulting from an act of the legislature cutting off a portion of the township, leaving a person out of the township who, when elected, was a resident within its territory, would not be a "removal out of the township," within the meaning of section 8 of the act. The words, "become incapable of serving" refer, as we think, to a personal incapacity, mental or physical, on the part of the incumbent, and not to a supposed incapacity created by a change of the township boundary, leaving the incumbent a non-resident of the township. Non-residence renders one ineligible to the office, but not incapable of serving.

But if the above propositions were in doubt, yet the resolutions in question could not be sustained. For, upon the evidence, we find the fact to be that Mr. Stewart remained a resident within the new territorial limits from the time they were established by the act of 1901. That he, in good faith, desired to keep his residence within the township is abundantly evident; that he actually did so is, we think, sufficiently plain. The case shows that he was registered and voted in the township of Riverside at the spring and fall elections of 1901. At the time of the spring election of 1902 he was quarantined and did not vote, but he participated in the caucus of his party as a citizen of the township. He paid poll tax in the township of Riverside for the year 1901. He attended the meetings of the township committee and participated therein from the passage of the act of 1901 until the adoption of the resolutions in question. During all this

time he assumed to maintain a residence in the new building already mentioned. It is strongly contended that this residence was fictitious, his real residence and that of his family being, as is claimed, in the farm-house where he had formerly lived, in that part of the territory of the township which was cut off by the act of 1901. If the prosecutor, in his occupancy of the new building, had been actuated by a desire to acquire a new residence for any purpose of advantage to himself, we should hesitate to accept his occupancy of the house as *bona fide.* But as his effort manifestly was to keep himself qualified to fill an office to which he had been duly elected, and thereby to continue in the performance of public services for which the people had chosen him, we see no sufficient reason to doubt the *bona fides* of his residence.

The resolutions in question should be reversed, with costs.